**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DEBORAH ESTELL ESTRADA,

                Plaintiff,

       vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social
Security,

              Defendant.

Case No. EDCV 13-1462-JPR

**MEMORANDUM OPINION AND ORDER
REVERSING COMMISSIONER**

## I.   PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying her application for supplemental security income ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed June 16, 2014, which the Court has taken under submission without oral argument. For the reasons discussed below, the Commissioner's decision is reversed and this action is remanded for further proceedings.

1

**II.   BACKGROUND**

Plaintiff was born on April 25, 1959.  (AR 28, 61.)  She completed the 12th grade, and her only work experience was as a care provider for her aunt from July 2009 to January 2010.  (AR 160-61.)

On March 29, 2010, Plaintiff filed an application for SSI, alleging she had been disabled since January 31, 2001, because of bipolar disorder and depression.  (AR 61, 65, 159-60.)[1]  After Plaintiff's application was denied, she requested a hearing before an Administrative Law Judge.  (AR 78.)  A hearing was held on January 31, 2012, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 35-60.)  On February 17, 2012, the ALJ issued a written decision finding Plaintiff not disabled.  (AR 23-30.)  On March 12, 2012, Plaintiff requested review of the ALJ's decision (AR 18), and she subsequently submitted additional medical evidence (AR 9, 344-420).  On April 16, 2013, after considering the new evidence, the Appeals Council denied review.  (AR 5-10.)  This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  Id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence

---

[1]The record does not include Plaintiff's SSI application, but a disability-determination-and-transmittal form reflects that it was filed on March 29, 2010.  (See AR 61, 65.)

means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  Moreover, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012); see also Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011).  If the evidence as a whole can reasonably support either affirming or reversing, the reviewing court "may not substitute its judgment" for the Commissioner's.  Reddick, 157 F.3d at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.   42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

1    (9th Cir. 1992).

2         A.   The Five-Step Evaluation Process

3         An ALJ follows a five-step sequential evaluation process to

4    assess whether someone is disabled.   20 C.F.R. § 416.920(a)(4);

5    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as

6    amended Apr. 9, 1996).   In the first step, the Commissioner must

7    determine whether the claimant is currently engaged in

8    substantial gainful activity; if so, the claimant is not disabled

9    and the claim must be denied.   § 416.920(a)(4)(i).   If the

10   claimant is not engaged in substantial gainful activity, the

11   second step requires the Commissioner to determine whether the

12   claimant has a "severe" impairment or combination of impairments

13   significantly limiting her ability to do basic work activities;

14   if not, a finding of not disabled is made and the claim must be

15   denied.   § 416.920(a)(4)(ii).   If the claimant has a "severe"

16   impairment or combination of impairments, the third step requires

17   the Commissioner to determine whether the impairment or

18   combination of impairments meets or equals an impairment in the

19   Listing of Impairments ("Listing") set forth at 20 C.F.R., Part

20   404, Subpart P, Appendix 1; if so, disability is conclusively

21   presumed and benefits are awarded.   § 416.920(a)(4)(iii).

22        If the claimant's impairment or combination of impairments

23   does not meet or equal one in the Listing, the fourth step

24   requires the Commissioner to determine whether the claimant has

25   sufficient residual functional capacity ("RFC")[2] to perform her

26   _____

27        [2]RFC is what a claimant can do despite existing exertional
     and nonexertional limitations.   § 416.945; see Cooper v.
28   Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

past work; if so, she is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. <u>Drouin</u>, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. <u>Id.</u> If that happens or if the claimant has no past relevant work, the Commissioner bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since March 29, 2010, the application date. (AR 25.) At step two, he concluded that Plaintiff had the severe impairments of bipolar disorder and depression. (<u>Id.</u>) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing, specifically considering Listings 12.04 and 12.06. (<u>Id.</u>) At step four, the ALJ found that Plaintiff had the RFC to perform "a full range of work at all exertional levels," limited to "simple repetitive tasks with no intense personal interaction such as team work and close supervision." (AR 26.) Based on the VE's testimony, the ALJ concluded that jobs existed in sufficient numbers in the national economy that Plaintiff could perform. (AR 29.) The ALJ therefore concluded that Plaintiff was not disabled. (AR 29-30.)

**V.    DISCUSSION**

Plaintiff contends that the ALJ erred in (1) according little weight to the opinions of her treating and examining doctors, (2) discounting her son's third-party statement, (3) "rejecting" her credibility, (4) relying on VE testimony that was inconsistent with the Dictionary of Occupational Titles, (5) failing to rely on the VE's purported "testimony that based on the hypothetical the Plaintiff could not sustain employment," and (6) failing to consider whether Plaintiff met or equaled Listing 12.05.  (J. Stip. at 4.)

        The ALJ Erred in Evaluating the Medical Evidence

Plaintiff contends that the ALJ erred by according "controlling weight" to the opinion of nonexamining physician Dr. S. Khan and rejecting the opinions of treating physician Jeffrey Alan Davis and examining psychologist Gabriela Gamboa.  (Id. at 15-16.)

                1.    Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  Id.

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the

1 claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

2 If a treating physician's opinion is well supported by medically

3 acceptable clinical and laboratory diagnostic techniques and is

4 not inconsistent with the other substantial evidence in the

5 record, it should be given controlling weight.  § 416.927(c)(2).

6 If a treating physician's opinion is not given controlling

7 weight, its weight is determined by length of the treatment

8 relationship, frequency of examination, nature and extent of the

9 treatment relationship, amount of evidence supporting the

10 opinion, consistency with the record as a whole, the doctor's

11 area of specialization, and other factors.  § 416.927(c)(2)-(6).

12 When a treating or examining doctor's opinion is not

13 contradicted by other evidence in the record, it may be rejected

14 only for "clear and convincing" reasons.  See Carmickle v.

15 Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008)

16 (quoting Lester, 81 F.3d at 830-31).  When a treating or

17 examining physician's opinion is contradicted, the ALJ must

18 provide only "specific and legitimate reasons" for discounting

19 it.  Id.

20     2.   Relevant facts[3]

21 On July 8, 2010, Dr. Khan, who specialized in child and

22 adolescent psychiatry,[4] reviewed Plaintiff's medical records and

23 _____

24     [3]Because the parties are familiar with the facts, they are
summarized only to the extent relevant to this contested issue.

25     [4]Dr. Khan's electronic signature includes a medical

26 specialty code of 49, indicating child and adolescent psychiatry.
(AR 260); see Program Operations Manual System (POMS) DI

27 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.
ssa.gov/poms.nsf/lnx/0426510089; POMS DI 26510.090, U.S. Soc.

28 Sec. Admin. (Aug. 29, 2012), http://policy.ssa.gov/poms.nsf/

completed a psychiatric-review-technique form and a mental-RFC assessment. (AR 260-73.) In the PRT form, Dr. Khan opined that Plaintiff had bipolar disorder resulting in moderate limitations on her ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence, or pace. (AR 263, 268.) Dr. Khan stated that he had "reviewed all the evidence in [Plaintiff's] file" and believed that if she was "compliant with medications," she could "sustain simple one-two step repetitive tasks with adequate pace and persistence," "adapt and relate to coworkers and supervisors," and "deal with changes in a work setting" but she "most likely would have difficulty working with the general public." (AR 270.) He recommended a "non-public work setting with exposure to others that is not too intense and/or prolonged[,] i.e. with limited public contact." (Id.) He believed that Plaintiff would "continue improving/stabilizing with ongoing support." (Id.)

        In the mental-RFC form, Dr. Khan checked that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention for extended periods; perform activities within a schedule; maintain regular attendance and be punctual; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and accept

_____

lnx/0426510090.

instructions and respond appropriately to criticism from
supervisors.  (AR 271-72.)  Plaintiff was not significantly
limited in the other listed areas, including the ability to
understand, remember, and carry out very short and simple
instructions; sustain a regular routine without special
supervision; make simple work-related decisions; get along with
coworkers or peers; maintain socially appropriate behavior; and
respond appropriately to changes in the work setting.  (Id.)  At
the end of the form, Dr. Khan wrote that "[w]ith continuing
compliance with all Rx recommendations," Plaintiff would be able
to understand and remember simple instructions, "sustain
attention/concentration for two hour periods to complete a
regular workday at an acceptable pace and attendance schedule,"
"interact adequately in casual settings and respond appropriately
to constructive instructions," and "respond to simple/infrequent
changes in routine."  (AR 273.)  He recommended a "non-public
work setting with exposure to others that is not too intense
and/or prolonged."  (Id.)

     On April 4, 2011, Plaintiff's treating physician, Dr. Davis,
who apparently specialized in psychiatry,[5] completed a mental-
residual-functional-capacity questionnaire.  (AR 339-43.)  Dr.
Davis stated that he had treated Plaintiff since 2002 and listed
her psychiatric diagnosis as bipolar disorder.  (AR 339.)  He
listed several clinical findings supporting his assessment,
included "diminished mood," "stressed out," "feeling tired,"
"problems sleeping," "decreased concentration," and "intermittent

---

     [5]Dr. Davis worked in Kaiser Permanente's department of
psychiatry.  (See, e.g., AR 257.)

suicidal ideation – none currently."[6]  (Id.)  On a list of "signs
and symptoms," Dr. Davis checked, among other things, loss of
interest in almost all activities, decreased energy, feelings of
guilt or worthlessness, generalized persistent anxiety, mood
disturbance, difficulty thinking or concentrating, seclusiveness,
emotional withdrawal or isolation, unstable interpersonal
relationships, emotional lability, and sleep disturbance.  (AR
340.)

     Dr. Davis opined that Plaintiff was "[u]nable to meet
competitive standards" in the areas of remembering worklike
procedures; maintaining attention for two-hour segments;
maintaining regular attendance and being punctual; sustaining an
ordinary routine without special supervision; making simple work-
related decisions; dealing with normal work stress; and
understanding, remembering, and carrying out detailed
instructions.  (AR 341-42.)  She was seriously limited in, but
not precluded from, performing the other listed activities,
including understanding, remembering, and carrying out very short
and simple instructions; working in coordination with or
proximity to others without being unduly distracted; completing a
normal workday and workweek without interruptions from
psychologically based symptoms; performing at a consistent pace
without an unreasonable number and length of rest periods;
accepting instructions and responding appropriately to criticism
from supervisors; getting along with coworkers or peers;

_____

     [6]Plaintiff was involuntarily hospitalized in June 2004 after
attempting suicide by taking an overdose of medication.  (AR 344-
49.)

responding appropriately to changes in a routine work setting; interacting with the general public; maintaining socially appropriate behavior; and adhering to basic standards of neatness and cleanliness.  (Id.)  Dr. Davis wrote that Plaintiff's "low stress tolerance," "low concentrat[ion]," and significantly depressed mood prevented her from maintaining employment.  (AR 343.)

On June 24, 2011, Dr. Gamboa, a clinical psychologist, performed a complete psychological evaluation of Plaintiff at the agency's request.  (AR 317-26.)  As part of her evaluation, Dr. Gamboa performed a mental-status examination and administered psychological tests comprising the Trailmaking Test, Parts A and B; Wechsler Adult Intelligence Scale; and the Wechsler Memory Scale.  (AR 317, 321-22.)  She also reviewed a Kaiser Permanente therapist's October 28, 2010 treatment note, which included a diagnosis of bipolar disorder and a Global Assessment of Functioning ("GAF") score of 60.[7]  (AR 319; see also AR 280-81 (Oct. 28, 2010 treatment note).)

During the mental-status examination, Dr. Gamboa noted that Plaintiff was "cooperative yet extremely anxious, depressed and

---

[7]A GAF score of 51 to 60 indicates either moderate symptoms or moderate difficulty in social, occupational, or school functioning.  See Diagnostic and Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000).  The Commissioner has declined to endorse GAF scores, see Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50764-65 (Aug. 21, 2000) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice.  Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012).

11

distressed throughout the evaluation," her effort was "adequate," and her response time was slow.  (AR 320.)  Plaintiff's speech was "clear yet extremely fast and it was difficult to understand"; Dr. Gamboa had to "clarify and slow her down throughout the evaluation."  (Id.)  Plaintiff's thoughts were organized but "very fast and racing."  (Id.)  She did not display any "obvious psychotic indicators" but did appear "bizarre and somewhat confused."  (Id.)  Based on testing and clinical observation, Dr. Gamboa concluded that Plaintiff's intellectual functioning, memory, and general fund of knowledge were in the "borderline range" and her concentration, attention span, insight, and judgment were in the "low average to borderline range."  (AR 320-21.)  Testing revealed a full-scale IQ of 62.  (AR 321.)

Dr. Gamboa concluded that "[g]iven the test results and clinical data, [Plaintiff's] overall cognitive ability falls within the borderline range of functioning."  (AR 322.)  She noted that "[i]t was evident that [Plaintiff] was experiencing severe anxiety symptoms at the time" of her evaluation; she was "shaking" and her thoughts were "extremely unfocused" and "not very clear."  (Id.)  Dr. Gamboa diagnosed panic disorder with agoraphobia, major depressive disorder, and bipolar disorder II, and she assigned a GAF score of 44.[8]  (Id.)

---

[8]Previous editions of the DSM stated that a GAF score in the range of 41 to 50 indicated "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Disorders, Text Revision 34 (4th ed. 2000).

Dr. Gamboa opined that Plaintiff demonstrated a "moderate inability to understand, remember, and carry out short and simplistic instructions without difficulty"; a "moderate inability to understand, remember, and carry out detailed instructions"; and a "moderate inability to make simplistic work-related decisions without special supervision." (AR 323.) She further opined that Plaintiff was "significantly anxious" and would "have a moderate inability to interact appropriately with supervisors, coworkers and peers," and her "concentration and ability to focus [were] severely impaired due to her anxiety." (Id.)

In his decision, the ALJ accorded "little weight" to Dr. Davis's opinion because it was "inconsistent with the objective findings" in the medical record and because he "did not provide an explanation" for his assessment, "primarily summarized [Plaintiff's] subjective complaints," and "did not provide objective clinical or diagnostic findings to support the functional assessment." (AR 28.) The ALJ also gave "little weight" to Dr. Gamboa's opinion because it was "inconsistent with the record as a whole and all the objective treatment evidence in the record." (Id.) The ALJ concluded that Dr. Khan's finding of "moderate limitations" was "consistent with the record as a whole" and gave it "significant weight."[9] (Id.)

---

[9]The ALJ stated that he was giving significant weight to the opinions of "the State agency reviewing physicians" (AR 28), but the cited exhibits were all completed by one physician, Dr. Khan (see AR 260-75).

3.   <u>Analysis</u>

Plaintiff contends that the ALJ erred by crediting Dr. Khan's opinion over those of Drs. Davis and Gamboa, both of whom "came to similar conclusions regarding [P]laintiff's functional capacity." (J. Stip. at 15.)  Plaintiff further contends that Dr. Khan's opinion "lack[s] substantial evidence" because he "did not have the opportunity to review later records including the assessments of Dr. Davis and Dr. Gamboa." (J. Stip. at 15-16.) For the reasons discussed below, remand is warranted on this ground.

The ALJ accorded "significant weight" to Dr. Khan's finding of "moderate limitations" because he found it was "consistent with the record as a whole." (AR 28.)  In doing so, however, the ALJ failed to acknowledge that Dr. Khan reviewed only three of Plaintiff's psychiatric treatment notes – dating from May 2009, March 2010, and May 2010 – before rendering his opinion.[10]  (See AR 274-75 (case analysis electronically signed by Dr. Khan and summarizing three treatment notes), 242-59 (treatment notes)); § 416.927(c)(6) ("extent to which an acceptable medical source is familiar with the other information" in record is "relevant factor[] . . . in deciding the weight to give to a medical opinion").  Dr. Khan, moreover, never reviewed Dr. Gamboa's opinion and independent findings, including her clinical observations and the results of psychological testing, nor did he review the opinion of Plaintiff's treating physician, Dr.

---

[10]Dr. Khan rendered his opinion on July 8, 2010. (See AR 260.)  Plaintiff submitted additional treatment records on October 13, 2010, December 7, 2010, and February 20, 2012. (See AR 276-315, 344-420.)

Davis.[11]  See Thompson v. Astrue, No. 1:10-CV-00711 GSA, 2011 WL 2680841, at *7-8 (E.D. Cal. July 8, 2011) (when nonexamining physician rendered opinion without considering treating-physician opinion, ALJ's crediting nonexamining-physician opinion based on "consistency with the medical record" was "misplaced").  Moreover, unlike Dr. Khan, Dr. Gamboa based her opinion on clinical findings and psychological testing, and Dr. Davis based his on clinical findings over his nine-year history of treating Plaintiff.  See § 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."), (c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  The ALJ therefore erred in crediting Dr. Khan's opinion over those of Drs. Gamboa and Davis.[12]

        The ALJ also failed to state sufficient reasons for according little weight to the opinions of Plaintiff's treating and examining physicians.  The ALJ discredited Dr. Davis's opinion because he "did not provide an explanation for [his] assessment," "primarily summarized [Plaintiff's] subjective complaints," and "did not provide objective clinical or

_____

        [11]Drs. Davis and Gamboa rendered their opinions nine and 11 months, respectively, after Dr. Khan rendered his.  (See AR 260, 317, 343.)

        [12]Moreover, even though the ALJ credited Dr. Khan's findings, he omitted from the RFC Dr. Khan's limitations to simple tasks involving only "one-two step[s]" and a "non-public work setting."  (AR 270, 273.)

diagnostic findings to support the functional assessment."  (AR
28.)  But Dr. Davis in fact listed many "signs and symptoms" in
support of his assessment, including loss of interest in
activities, decreased energy, feelings of worthlessness,
persistent anxiety, mood disturbance, difficulty concentrating,
seclusiveness, emotional withdrawal or isolation, unstable
interpersonal relationships, emotional lability, and sleep
disturbances.  (See AR 339-40.)  Many of those findings were also
reflected in Dr. Davis's treatment notes and the records from
Plaintiff's group therapy through his office.  (See AR 311
(sleeping three hours a night, low concentration and energy, no
longer drives, mood down, feeling very depressed and irritable),
309 (poor sleep and feeling more agitated), 306 (anxious and
tearful), 303 (depressed and teary), 301 (fearful with
hopelessness and helplessness, tearful), 298 (anxious, recent
suicidal ideation), 283-84 (labile mood, somewhat pressured
speech, complaining of pervasive sadness over past week), 383-84
(depressed, anxious, poor sleep, decreased interest in things,
mood down), 391-92 (low mood, low energy, slept three hours
previous night, mood swings), 399-400 ("doing better" and
"feeling calmer" but recent suicidal ideation, feels worthless,
hard relationship with father, erratic sleep, mood sad and
stressed); but see AR 296 (positive mood, bright affect, became
tearful talking about father's cancer treatment), 293 (positive
mood and affect), 287 (mood good, affect appropriate, sleeping
well with medication), 284 (more stable, less depressed).)  Those
findings in Plaintiff's treatment notes support Dr. Davis's
opinion.  See Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir.

2014) (ALJ erred by "fail[ing] to recognize that [treating physician's] opinions expressed in check-box form . . . were based on significant experience with [plaintiff] and supported by numerous records" and thus "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit").  In any event, the ALJ's discrediting Dr. Davis's opinion as brief and unsupported is questionable given that he fully credited Dr. Khan's opinion, which is at least as brief and similarly expressed on check-off forms.

The ALJ also likely erred in rejecting Dr. Davis's opinion as premised on Plaintiff's subjective complaints, because it does not appear that the ALJ gave sufficient reasons for discounting Plaintiff's credibility.  See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." (internal quotation marks omitted)); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (when ALJ properly discounted claimant's credibility, he was "free to disregard" doctor's opinion that was premised on claimant's properly discounted subjective complaints).  The ALJ discounted Plaintiff's credibility because "[d]espite [her] alleged limitations," she reported in a function report that "she watches television; she prepares meals; she does laundry; she does household chores; she walks around when she goes outside; she goes grocery shopping; she can handle her finances; she listens to music; she rents movies; [and] she spends time with her family and friends, when they come visit or she goes to visit them."

17

(AR 27 (citing AR 179-86).)  The ALJ also noted that Plaintiff reported to Dr. Gamboa that she "is able to dress, bathe and walk on her own."  (Id. (citing AR 320).)  But some of those activities, such as watching television, listening to music, and renting movies, are not necessarily inconsistent with her asserted psychiatric symptoms.  See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").  Moreover, as Plaintiff argues (J. Stip. at 9), the ALJ failed to account for the context of many of those statements.  For example, Plaintiff said she prepared "one meal a day," comprising "mainly sandwiches or frozen foods" and taking 10 minutes to prepare; she said she did not "have the patience to cook a meal."  (AR 181.)  Plaintiff said she did chores and laundry but "most of the time [she didn't] complete them" (id.); she said she would "get overwhelmed knowing [she had] household chores" and would start a chore, get distracted, and start another one (AR 179).  Plaintiff said she was able to handle money but it would "take [her] forever."  (AR 182.)  Moreover, Plaintiff told Dr. Gamboa that she could dress, bathe, and walk on her own, but she also said that she could go up to three days without dressing or bathing due to her lack of motivation, energy, and desire to do anything.  (AR 320.)  The ALJ erred by failing to consider the context of Plaintiff's statements.  See Reddick, 157 F.3d at 722-23 (impermissible for ALJ to develop evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports").  As such, Plaintiff's subjective

18

complaints were not "properly discounted" and the ALJ should not have discredited Dr. Davis's opinion for relying on them.

The ALJ also rejected Drs. Davis's and Gamboa's opinions because they were inconsistent with the objective findings in the record. (AR 28.) But the ALJ fails to point to any specific record that conflicted with any particular finding in Drs. Davis's and Gamboa's opinions. (See id.) Moreover, although the ALJ concluded that Plaintiff's mental status examinations were "generally within normal limits" from May 2009 to October 2010 (AR 27), as discussed above, many of Plaintiff's treatment notes in fact reflect psychiatric symptoms. The ALJ also noted that Plaintiff's treatment records "suggest that [she] could be treated successfully if she were compliant with her medication." (AR 28.) Indeed, some evidence does suggest that Plaintiff's symptoms improved when she took her medication. (See, e.g., AR 256 ("sleeping better with meds"), 246 (mood was "getting better" since restarting medication); see also AR 382-84 (reporting she had stopped taking medication and was experiencing depression, anxiety, poor sleep, and decreased interest in things).) Other evidence, however, suggested that Plaintiff suffered from psychiatric symptoms even when taking her medication as directed. (See, e.g., AR 243-44 (Remeron[13] "made her more groggy" and "she still ha[d] a lot of insomnia and depression"; mood was "down" and concentration low, Dr. Davis recommended discontinuing Remeron and increasing other medication), 311-13 (after stopping

---

[13]Remeron, or mirtazapine, is an antidepressant. Mirtazapine, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a697009.html (last updated Feb. 15, 2013).

Remeron but apparently continuing other medications, Plaintiff was "very depressed and irritable," sleeping only three hours a night, and had low concentration and energy; Dr. Davis prescribed an additional medication).)  As such, substantial evidence does not support the ALJ's finding that Drs. Gamboa's and Davis's opinions were inconsistent with the record.[14]

Because the ALJ's assessment of the medical evidence is not supported by substantial evidence, reversal is warranted on this ground.

4.   Remand for further proceedings is appropriate

When, as here, the ALJ improperly discredited medical-opinion evidence, the Court generally has discretion to remand for further proceedings.  See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the

---

[14]The ALJ also accorded "significant weight" to a GAF score of 60 reflected in an October 28, 2010 treatment record, finding that it "indicat[ed] moderate symptoms" and was "very close to a finding of mild symptoms."  (AR 28; see also AR 279-80.)  That GAF score, however, was rendered by a marriage and family therapist, who is not considered an acceptable medical source under Social Security regulations.  See § 416.913(a), (d).  Dr. Gamboa, by contrast, found that Plaintiff had a GAF score of 44, indicating serious symptoms.  (See AR 322.)  Moreover, as previously noted, the Commissioner has declined to endorse GAF scores, see 65 Fed. Reg. 50764-65 (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice. Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012).  As such, the therapist's assigned GAF score does not constitute substantial evidence in support of the ALJ's rejection of the examining and treating physician's opinions.

"credit-as-true" rule to direct an immediate award of benefits.
Id. at 1179 (noting that "the decision of whether to remand for
further proceedings turns upon the likely utility of such
proceedings"); see also Garrison v. Colvin, 759 F.3d 995, 1020
(9th Cir. 2014) (noting that credit-as-true rule applies to
medical opinion evidence).

Under the credit-as-true framework, three circumstances must
be present before the Court may remand to the ALJ with
instructions to award benefits: "(1) the record has been fully
developed and further administrative proceedings would serve no
useful purpose; (2) the ALJ has failed to provide legally
sufficient reasons for rejecting evidence, whether claimant
testimony or medical opinion; and (3) if the improperly
discredited evidence were credited as true, the ALJ would be
required to find the claimant disabled on remand." Garrison, 759
F.3d 1020. When, however, the ALJ's findings are so
"insufficient" that the Court cannot determine whether the
rejected testimony should be credited as true, the Court has
"some flexibility" in applying the credit-as-true rule. Connett
v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see also
Garrison, 759 F.3d at 1020 (noting that Connett established that
credit-as-true rule may not be dispositive in all cases). This
flexibility should be exercised "when the record as a whole
creates serious doubt as to whether the claimant is, in fact,
disabled within the meaning of the Social Security Act."
Garrison, 759 F.3d at 1021.

Here, the third factor of the test is not met. Even if Drs.
Gamboa's and Davis's opinions as to Plaintiff's functional

21

1   limitations are credited as true, it is not clear that Plaintiff

2   would be found disabled because no VE has testified that a person

3   with such limitations would be unable to work. (See AR 52-56 (VE

4   testimony)); cf. Garrison, 759 F.3d at 1022 (plaintiff satisfied

5   credit-as-true standard when, among other things, "VE explicitly

6   testified that a person with the impairments described by

7   [plaintiff] or her medical caretakers could not work").

8   Moreover, because further VE testimony is needed to determine

9   whether sufficient jobs exist that Plaintiff can perform, the

10  first of the three requirements has not been met, either.[15]

11      Remand is appropriate so that the ALJ can reconsider

12  Plaintiff's RFC in light of Drs. Gamboa's and Davis's opinions

13  and elicit appropriate VE testimony regarding whether sufficient

14  jobs exist that Plaintiff can perform.  Moreover, the Court does

15  not reach the remaining disputed issues because on remand the ALJ

16  will elicit new VE testimony and likely reassess, in light of

17  Drs. Gamboa's and Davis's opinions, whether Plaintiff meets or

18  equals a Listing and whether Plaintiff's and her son's statements

19  should be credited.

---

23      [15]In one of the disputed issues, Plaintiff contends that the
24  VE's testimony establishes that she could not sustain employment.
    (J. Stip. at 27 (citing AR 56).)  But in the cited hypothetical,
25  Plaintiff's counsel asked the VE whether Plaintiff could perform
    any work if her psychological limitations "create[d] errors in
26  her work at least 20 percent of the time" (AR 56), a limitation
    that appears nowhere in Drs. Gamboa's or Davis's opinions (see AR
27  323, 339-43).  As such, the VE's testimony does not establish
    that Plaintiff would be unable to work if those opinions are
28  credited.

**VI.    CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.


DATED: October 14, 2014

JEAN ROSENBLUTH
U.S. Magistrate Judge

23